WASHINGTON-DETROIT THEATRE CO. *v.* MOORE.

1. ACTION—DECLARATORY JUDGMENTS.
   A case for declaratory judgment must rest upon an actual controversy, be formally presented with proper parties, and is not a substitute for other regular action.

2. CONSTITUTIONAL LAW—SOVEREIGN STATE HAS INHERENT RATHER THAN GRANTED POWERS.
   A sovereign State is not a government of granted powers, but it has inherent powers enabling it to attempt solution of any social problem arising from current conditions, and it may adventure into experiment for the public welfare.

On declaration of rights or declaratory judgments, see annotation in 12 A. L. R. 52; 19 A. L. R. 1124; 50 A. L. R. 42.

3. SAME—LEGISLATIVE AND JUDICIAL POWER.

> While the legislature obtains legislative power and the courts receive judicial power by grant in the State Constitution, the whole of such power reposing in the sovereignty is granted to those bodies except as it may be restricted in the same instrument.

4. JUDGMENT—DECLARATORY JUDGMENTS—RES ADJUDICATA.

> Under Act No. 36, Pub. Acts 1929, a declaratory judgment, like an ordinary one, is self-enforcing to the extent of being final and constituting *res adjudicata*.

5. SAME—COURTS HAVE POWER TO ENFORCE JUDGMENTS.

> Every court has inherent power to enforce its judgments and decrees, and to make such orders and issue such process as may be necessary to render them effective, and this power is not affected by the fact that the decree is final.

6. CONSTITUTIONAL LAW—JUDGMENT—DECLARATORY JUDGMENTS— STATUTES.

> Court has necessary judicial power to enforce its judgments under declaratory judgment act (Act No. 36, Pub. Acts 1929), since authority to grant relief necessary to end controversy and enforce its judgment by appropriate means where compulsion is necessary is sufficient; no reasonable test of judicial power demanding that judgment must carry unwarranted or unnecessary relief or process of enforcement.

7. SAME.

> Act No. 36, Pub. Acts 1929, relating to declaratory judgments, providing that statute shall apply only to cases of actual controversy (section 1), and that declaration of rights made thereunder shall have effect of final judgments (section 6), is constitutional.

Appeal from Wayne; Ferguson (Homer), J. Submitted January 14, 1930. (Docket No. 41, Calendar No. 34,690.) Decided March 6, 1930.

Bill by the Washington-Detroit Theatre Company, a Michigan corporation, against Anna Moore for declaration of rights secured by a 99-year lease under the declaratory judgment act (Act No. 36,

Pub. Acts 1929). From an order denying defendant's motion to dismiss, she appeals. Affirmed.

*Wilkinson, Lowther, Wilkinson & O'Connell,* for plaintiff.

*Stevenson, Butzel, Eaman & Long (Rockwell T. Gust, Edward H. Rogers,* and *Victor W. Klein,* of counsel), for defendant.

FEAD, J. Plaintiff has a 99-year lease of premises owned by defendant, upon which is a theatre building. Plaintiff claims the right under the lease to demolish the building, erect a new one, and use the latter for other than theatre purposes. Upon discussion of the matter with defendant, the latter denied plaintiff's construction of the lease, and threatened to forfeit it if plaintiff commenced destruction of the building or used it otherwise than for a theatre. Plaintiff alleges that it cannot operate the building for theatre purposes without great loss, and has already lost an opportunity for profitable sublease because of defendant's position. It brought this action under Act No. 36, Pub. Acts 1929, the declaratory judgment law, to have its rights in this respect determined, and prayed for an injunction restraining defendant from interfering with destruction of the building or attempting to forfeit the lease. The bill states a cause of action under the act, and, upon motion to dismiss, the court held the bill well laid and defendant has appealed.

The question is upon the constitutionality of the act.

A former declaratory judgment statute, Act No. 150, Pub. Acts 1919, was held unconstitutional by a majority of this court, Mr. Justice FELLOWS writing the prevailing opinion, and Mr. Justice SHARPE fil-

ing in dissent. *Anway* v. *Railway Co.*, 211 Mich. 592 (12 A. L. R. 26). This was a pioneer case in this country, the discussion was exhaustive, and, as the report is readily obtainable, we need not retread the ground.

The major part of Mr. Justice FELLOWS' opinion was founded upon the construction of the statute, that it provided for the determination of "moot cases," the rendition of "advisory opinions," and the giving of "advice."

"In short, it requires that the time of the court shall be taken, not in the determination of actual controversies where rights have been invaded and wrongs have been done, but in the giving of advice to all who may seek it."

The present statute, while substantially identical with the former act in other respects, eliminates the possibility of its being so construed. By its language it is brought into general harmony with the interpretation given the former act by Mr. Justice SHARPE. It provides in section 1 that it applies only to "cases of actual controversy," and contains a paragraph which has no counterpart in the former act:

"SEC. 6. Declaration of rights made under this act shall have the effect of final judgments."

That the present act does not constitute a court a fountain of legal advice to fill the cups of loitering wayfarers is also amply sustained by judicial opinion. The courts of Scotland have been rendering declaratory judgments for over 300 years. In England, they have been in vogue since 1852. They are part of judicial systems in Canada. About contemporaneous with or since the *Anway Case*, 17 or more American States have adopted identical or

similar laws. Many of the courts have spoken upon them. It is of interest to note some of the adjudged requirements of a proper case for declaratory relief, especially as approved by American courts:

1. The exercise of the jurisdiction is discretionary with the court, and where no consequential relief is sought, it will be exercised with great care, extreme caution, and only where there are special circumstances demanding it. *Kariher's Petition,* 284 Pa. 455 (131 Atl. 265).

2. There must be an actual and *bona fide* controversy as to which the judgment will be *res adjudicata.* Such a case requires that all the interested parties shall be before the court. *Holt* v. *Custer County,* 75 Mont. 328 (243 Pac. 811); *Stinson* v. *Graham* (Tex. Civ. App.), 286 S. W. 264; *West* v. *City of Wichita,* 118 Kan. 265 (234 Pac. 978); *Revis* v. *Daugherty,* 215 Ky. 823 (287 S. W. 28); *Patterson's Ex'rs* v. *Patterson,* 144 Va. 113 (131 S. E. 217); *Tanner* v. *Boynton Lumber Co.,* 98 N. J. Eq. 85 (129 Atl. 617); *Burton* v. *Durham Realty & Ins. Co.,* 188 N. C. 473 (125 S. E. 3); *Ezzell* v. *Exall,* 207 Ky. 615 (269 S. W. 752); *Shearer* v. *Backer,* 207 Ky. 455 (269 S. W. 543); *Kelly* v. *Jackson,* 206 Ky. 815 (268 S. W. 539).

3. The court will not decide as to future rights but will wait until the event has happened, unless special considerations otherwise require. *Tanner* v. *Boynton Lumber Co., supra; In re Gooding's Will,* 208 N. Y. Supp. 793; *Kariher's Petition, supra.*

4. A declaration will not be made in a matter where the interest of the plaintiff is merely contingent upon the happening of some event. *Hodges* v. *Hamblen County,* 152 Tenn. 395 (277 S. W. 901).

5. Where the court is asked for no consequential relief, it will not entertain the case if the effect is to interfere with the rights of a party to appeal to a court having jurisdiction of the particular matter by statute. *Kariher's Petition, supra; Wight* v.

*Board of Education,* 99 N. J. Eq. 843 (133 Atl. 387);
*Shearer* v. *Backer, supra; State* v. *Bd. of Co. Comrs.
of Wyandotte Co.,* 117 Kan. 151 (230 Pac. 531);
*Proctor* v. *Avondale Heights Co.,* 200 Ky. 447 (255
S. W. 81); *List's Estate,* 283 Pa. 255 (129 Atl. 64);
*Hagan* v. *Dungannon Lumber Co.,* 145 Va. 568 (134
S. E. 570).

6. Ordinarily the court will refuse a declaration
which can be made only after a judicial investiga-
tion of disputed facts, especially where the disputed
questions of fact will be the subject of judicial in-
vestigation in a regular action. *Newsum* v. *Inter-
state Realty Co.,* 152 Tenn. 302 (278 S. W. 56).

In addition to the foregoing, the British courts
have another rule which does not seem to have been
passed upon in this country:

7. A declaration cannot be had in respect of a
cause of action which, it is merely apprehended or
feared, defendant may assert, where he has made no
claim against the plaintiff thereon, although he re-
fuses to waive any rights thereunder.

These rules and citations are taken from the notes
in 12 A. L. R. 52, 19 A. L. R. 1124, and 50 A. L. R.
42, which digest a large number of illustrative cases.
Their listing here is not to be taken as advance no-
tice of the future position of this court, although
their soundness is appealing, and, so far as they in-
volve the construction of similar statutes, the deci-
sions are entitled to the usual respect and considera-
tion. They are set out particularly to indicate the
character of judicial support to the construction of
our statute, evident from its language, that a case
for declaratory judgment must rest upon an actual
controversy, be formally presented with proper par-
ties, and is not a substitute for other regular actions.

Upon the basis that the proceedings are confined
to actual controversies, declaratory judgment laws

have been held constitutional in the following cases: *State* v. *Grove,* 109 Kan. 619 (201 Pac. 82, 19 A. L. R. 1116); *Kariher's Petition, supra; Miller* v. *Miller,* 149 Tenn. 463 (261 S. W. 965); *Braman* v. *Babcock,* 98 Conn. 549 (120 Atl. 150); *Patterson's Ex'rs* v. *Patterson, supra; Blakeslee* v. *Wilson,* 190 Cal. 479 (213 Pac. 495); *McCrory Stores Corp.* v. *Braunstein,* 102 N. J. L. 590 (134 Atl. 752); *Board of Education* v. *VanZandt,* 195 N. Y. Supp. 297.

In all except the last two the *Anway Case* was cited and discussed. No court except our own has held a declaratory judgment law unconstitutional.

Defendant, however, insists that the act, in providing for proceedings before rights have been invaded or a wrong committed or threatened, is unconstitutional as not covering the exercise of judicial power, under the authority of *Liberty Warehouse Co.* v. *Grannis,* 273 U. S. 70 (47 Sup. Ct. 282), and *Willing* v. *Chicago Auditorium Ass'n,* 277 U. S. 274 (48 Sup. Ct. 507), in which the court held that a proceeding for a declaratory judgment is not a "case" or "controversy" to which the judicial power of the Federal judiciary can attach. These cases did not pass upon the constitutionality of an act. In the latter case the facts were substantially identical with those at bar, except in the respect that there was merely a casual disagreement upon the legal right to tear down the building instead of definite negotiations to that end and actual controversy over the right. After eliminating a number of cases as distinguishable, among them *Muskrat* v. *United States,* 219 U. S. 346 (31 Sup. Ct. 250), relied upon and quoted at length by Mr. Justice Fellows, the court planted its ruling on one ground:

"But still the proceeding is not a case or controversy within the meaning of article 3 of the Constitution. The fact that the plaintiff's desires are thwarted by its own doubts, or by the fears of others, does not confer a cause of action. No defendant has wronged the plaintiff or has threatened to do so. Resort to equity to remove such doubts is a proceeding which was unknown to either English or American courts at the time of the adoption of the Constitution and for more than half a century thereafter." *Willing* v. *Chicago Auditorium Ass'n, supra.*

This historical argument, however much it may circumscribe a government of granted powers, is not applicable to a sovereign State whose inherent powers enable it to attempt solution of any social problem arising from current conditions, and which may adventure into experiment for the public welfare.

While the legislature obtains legislative power and the courts receive judicial power by grant in the State Constitution, the whole of such power reposing in the sovereignty is granted to those bodies except as it may be restricted in the same instrument. There is no constitutional restriction on the power of the legislature to recognize the complexity of modern affairs and to provide for the settlement of controversies between citizens without the necessity of one committing an illegal act or wronging or threatening to wrong the other. There is no constitutional expression of limitation upon the power of the court to decide such disputes. In the *Anway Case,* Mr. Justice SHARPE collected the definitions of judicial power and they need not be repeated here. When an actual controversy exists between parties, it is submitted in formal proceedings to a court, the decision of the court is binding upon the

parties and their privies and is *res adjudicata* of the issue in any other proceeding in court in which it may be involved, what else can the decision be but the exercise of judicial power?

"Turning to the function or duty imposed by our declaratory judgment act upon the superior court as set forth above, could it be claimed with any pretense of reason, that the function was legislative or executive? The answer is obvious. We must, then, conclude that the function is judicial, or that it falls outside of the three functions described as legislative, executive, or judicial. It would be a travesty to hold that this method of remedial justice could find no place in our system of government unless a place was made for it by an amendment to the Constitution." *Braman* v. *Babcock, supra.*

The further claim that a declaratory judgment is not an exercise of judicial power because no consequential relief is granted and no execution or other process of enforcement issues thereon is so fully treated in the opinion of Mr. Justice SHARPE in the *Anway Case* that little need be added.

In many cases of ordinary actions the mere determination of rights by judgment or decree ends the controversy. An execution or order of enforcement is issued at the instance of a party only where such determination does not suffice. The court itself does not, of its own motion, enforce its judgments. The situation is little different as to a declaratory judgment. Like an ordinary one, it is self-enforcing to the extent of being final and constituting *res adjudicata.* Section 3 of the act provides that if further relief be necessary or proper, it may be had on application of a party. Whether consequential relief be granted upon the original or a subsequent petition, and whether an order of enforcement be had of course or on application, go merely to the

practice, not to the power of the court. In many equity proceedings the decree is merely declaratory, and enforcement is had only on subsequent application for an order in contempt or otherwise. Moreover,

"Every court has inherent power to enforce its judgments and decrees, and to make such orders and issue such process as may be necessary to render them effective, and this power is not affected by the fact that the decree is final." 34 C. J. p. 737.

So the court has the authority to grant the relief necessary to end the controversy and to enforce its judgment by appropriate means where compulsion is necessary, it would seem sufficient. No reasonable test of judicial power can demand that the judgment must carry unwarranted or unnecessary relief or process of enforcement.

"To hold that the judicial power of this State is confined to the consideration of cases where consequential relief only is sought, would be enforcing a limitation upon the judicial power in accord with custom rather than with reason and logic." *Braman* v. *Babcock, supra.*

"When adverse litigants are present in court and there is a real controversy between them, a final decision rendered in any form of proceeding of which the court has jurisdiction is a judgment in the proper sense of that term, and the giving of it is a judicial function, whether or not execution may follow thereon. For instance, the ordinary judgment for defendant is merely a declaration that, on the evidence offered, the plaintiff has no case; though as a matter of fact, it may be entered in an action or proceeding which was instituted by the plaintiff with the idea, or hope, of securing an executory judgment; but, like all other declaratory judgments, a judgment for defendant has the effect of making

the issues at stake *res judicata,* and, in this important sense, such judgments are forever enforceable, —which, more than the fact that execution may or may not be issued thereon, gives them the character of judgments.'' *Kariher's Petition, supra.*

Most of the courts which have passed upon the constitutionality of the law refer to *State* v. *Grove, supra,* from which we quote:

''It is often said that a cause of action arises only upon the breach of a duty—the invasion of a right. This, however, is merely the announcement of a general rule of practice subject to possible exceptions and to legislative change. Actions to quiet title and to construe wills are recognized methods of invoking judicial action which do not originate in the actual commission of a wrong nor terminate in a judgment inflicting a penalty, granting compensation or injunction, or otherwise giving 'consequential relief,' the declaration of rights being all that is necessary to fit the requirements of the case. The decree in an action to quiet title is sometimes so drawn as to order the setting aside or cancellation of a deed. A declaration that the instrument is void and without effect amounts to the same thing. The judgment does not change the condition of the title but simply declares where it is vested. It gives the only relief that is necessary to settle the controversy— the determination of the ownership of the property. Why the legislature cannot authorize similar procedure in like situations to meet like needs is not apparent. It is hardly conceivable that any fundamental principle of our government, beyond legislative control, prevents two disputants, each of whom sincerely believes in the rightfulness of his own claim, but each of whom wishes to abide by the law whatever it may be determined to be, from obtaining an adjudication of their controversy in the courts without one or the other first doing some-

thing that is illegal (in the case of the present defendant criminal) if he is mistaken in his view of the law.''

In view of the difference in the statutes, the *Anway Case* is not determinative, and we think the present act is constitutional.

The order denying the motion to dismiss is affirmed, without costs, and the case is remanded for further proceedings.

Butzel, Clark, Potter, Sharpe, and North, JJ., concurred with Fead, J.

Wiest, C. J. (*concurring*). I can see no *legal* objection to the statute if, in practical application, it is limited to *bona fide* justiciable issues. The advisability of such a law is a legislative question, but its applicability in a particular instance is a judicial question. The statute does not supplant present legal and procedural methods, estop suits at law or in equity, or remit one having a right of action to its employment. With this understanding, I am constrained to concur in the opinion of Mr. Justice Fead.

Butzel, J., concurred with Wiest, C. J. Mc-Donald, J., did not sit.